```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                DOC#: _____
SOUTHERN DISTRICT OF NEW YORK                               DATE FILED: 07/20/2021
```

------------------------------------------------------------------------ x
**OTHMAN IBELA,**                            :
                                             :
                     **Plaintiff,**        :
                                             :
                                             :   **20-cv-3800 (ALC)**
    -against-                       :
                                             :   **OPINION & ORDER**
**ALLIED UNIVERSAL,**                        :
                                             :
                                             :
                                             :
                     **Defendant.**        :
                                             :
------------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Othman Ibela (hereinafter, "Plaintiff" or "Mr. Ibela") brings this action against Allied Universal (hereinafter, "Allied" or "Defendant") for discriminatory treatment, refusal to accommodate his disability, hostile work environment and retaliation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL").[1]

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 14, 2020. ECF No. 1 ("Compl."). He also submitted an Application for the Court to Request Pro Bono Counsel, ECF No. 5, which this Court denied on May 22, 2020, ECF No. 7. On July 16, 2020, the Court denied Defendant's

---

[1] Mr. Ibela's original Complaint asserted Title VII claims of discrimination on the basis of national origin. ECF No. 1 ("Compl.") at 3. Plaintiff's Amended Complaint does not assert such a claim, *see generally* Am. Compl. While *pro se* submissions are to be liberally construed, *see supra* p. 5, "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (internal citations omitted). However, the Court "may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." *Id.* (internal quotation marks and citations omitted). Here, there is no mention of national origin discrimination in Plaintiff's Amended Complaint, nor any facts from which national origin discrimination could be inferred. Thus, to the extent that Plaintiff attempts to raise this claim in his Opposition, this claim is dismissed.

request for a pre-motion conference in connection with their anticipated motion to dismiss, but granted Plaintiff leave to amend his complaint. ECF No. 10. On October 3, 2020, Plaintiff submitted an Amended Complaint. ECF No. 13 ("Am. Compl."). On October 30, 2020, Defendant filed a motion to dismiss and supporting memorandum of law ("Def.'s Mot."). ECF Nos. 19-20. On November 18, 2020, Plaintiff filed his opposition brief ("Pl. Opp." or "Opposition"), ECF No. 17, and on November 27, 2020, Defendant filed a reply brief in further support of its motion to dismiss ("Def.'s Reply"), ECF No. 21. Defendant's motion is deemed fully briefed. After careful consideration, Defendant's motion to dismiss is hereby **GRANTED**.

## BACKGROUND[2]

Plaintiff conclusorily alleges that Defendant reduced his hours and days of work, reprimanded him, reduced his salary, denied him work entirely, refused to reassign him and instead had him continue working with a co-worker who had harassed him, did not provide him with a safe work environment, and took disciplinary action against him. Am. Compl. at 2. Reading the Amended Complaint and Opposition liberally, this was all due to his "mental disorder." *Id.*; Pl. Opp. at 1-3. In his Opposition, Plaintiff disclosed that this mental disorder was bipolar disorder. *Id.* at 1.

On June 24, 2019, Plaintiff alleges that he was the victim of a hostile work environment provoked by his co-worker which he reported to his former manager, Mr. Nicholas. Am. Compl. at 4. Mr. Ibela's Amended Complaint includes no details on this alleged incident. *See generally* Am. Compl.[3] Plaintiff's former manager refused to take any action. Am. Compl. at 4. The next

---

[2] The following facts are taken from the allegations contained in Plaintiff's Amended Complaint and Plaintiff's Opposition brief, and are presumed to be true for purposes of this motion to dismiss. *See supra* note 1; *see also supra* p. 5.

[3] Plaintiff's original Complaint states that his co-worker told him he was "not welcome in USA [and] yelled at [him] by requesting [him] to leave the site[,] then he throw [sic] away my chair outside of the booth." Compl. at 3. Plaintiff makes similar claims in his Opposition. According to Mr. Ibela, his co-worker "harassed, discriminated and bullied" him due to his national origin by telling him he "came to the USA to take his job away from him." Pl. Opp.

2

day, he reported the incident to human resources but human resources failed to take any action and instead referred him back to his former manager. *Id.* His former manager allegededly "started to retaliate[] against [him] because [he] [] report[ed] the incident to [human resources]." *Id.*

On June 30, 2019, Plaintiff revealed his disability to his former manager and provided him with a doctor's letter. Pl. Opp. at 1. Plaintiff's former manager subsequently started taking "disciplinary action against [him]" by refusing to give Plaintiff work, and "by assuming that [he is] unable to do [his] job due to [his] disability." Am. Compl. at 4; *see also* Pl. Opp. at 2-3. Mr. Ibela "requested a plan to support [his] mental wellness at work," but his request was denied. Am. Compl. at 4.

On July 31, 2019, Plaintiff's former manager sent him a letter responding to his accommodation request which stated that "[i]n order to remain in good standing with Allied Universal, [he] will need to report to the Sysosett office with appropriate documentation" and that "[f]ailure to do so will result in [their] inability to provide [him] with work." Pl. Opp., Ex. E. According to Plaintiff, he "refused to comply with his request because the existence of [his] mental health diagnosis cannot be the basis for requesting [] all [his] mental health records," he "did not pose any direct threat to [himself] or to other coworkers," and his mental health did not "stop[] [him] from performing [his] duty." Pl. Opp. at 2.

From that day until September 14, 2019, Plaintiff's former manager made him "travel from one site to another and . . . reduced [his] hours and days of work, . . . removed [him] from the schedule the day [he was] suppose[d] to work" and "did not want [him] to have overtime."

---

at 1. Plaintiff also alleged that his co-worker "threw [his] chair outside of the security booth." *Id.* at 1. However, for the reasons discussed, Plaintiff has not made out a claim for discrimination on the basis of national origin. *See supra* note 1.

Pl. Opp. at 2. Plaintiff told him to stop harassing him, and he responded by "taking disciplinary actions against [him] over anything" and claimed that he was the "boss" and could do "whatever he wants" even "fire[] him." *Id*.

On September 22, 2019, Plaintiff's former manager sent him back to work with the same co-worker who had previously harassed him. Pl. Opp. at 2. His co-worker told him he was "not welcome to work on his post." *Id.* Plaintiff reported the incident to his former manager, but his former manager did not take any action and instead requested his medical records again. *Id.* On September 24, 2019, Mr. Ibela told his former manager to "stop all unlawful employment practi[c]es" or he would sue Allied. *Id.* However, his former manager failed to take any "reasonable steps to prevent harassment [and] discrimination." *Id.*

From September 24, 2019 to September 30, 2019, Plaintiff remained without work as a result of his former manager denying him work. Pl. Opp. at 2. On September 30, 2019, his former manager told him that "because [he] did not provide [his] medical records, he decided to den[y] him [from] working entirely." *Id.* He was therefore "forced to quit [his] job." *Id.*

On May 14, 2020, he filed the instant lawsuit against Allied.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). However, "the tenet that a court must accept as true all of the allgeations contained in a complaint is inapplicable to . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

Considering these standards, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). In construing a *pro se* plaintiff's opposition brief, the Court may read additional facts asserted in the opposition brief as supplementing the complaint. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

## DISCUSSION

### I. Plaintiff's ADA Claims

Plaintiff alleges discrimination, retaliation, hostile work environment, and failure to accommodate under the ADA. "A plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a *prima facie* case." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). To establish a claim under the ADA, a

Plaintiff must plausibly allege that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *See, e.g.*, *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *see also Williams v. New York City Dep't of Educ.*, No. 18-cv-11621, 2020 WL 906386, at *3 (S.D.N.Y. Feb. 25, 2020).

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual," a "record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). It also includes the "operation of a major bodily function." 42 U.S.C. § 12102(2)(B).

In his Amended Complaint, Plaintiff never specified what disability he allegedly has. *See generally* Am. Compl. Rather, he broadly asserted that he has a "mental disorder"/disability of which he informed his employer. *Id.* This is plainly insufficient. *See, e.g.*, *Williams*, 2020 WL 906386, at *4 ("[C]onclusory allegations of a disability are insufficient even at the pleading stage."). In his Opposition, Plaintiff specified that he suffers from bipolar disorder. Pl. Opp. at 1. However, this does not change the Court's conclusion that Plaintiff has failed to plausibly allege a disability within the meaning of the ADA. The ADA's definition of disability requires "an individual [to] have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Sussle v. Sirina Protection Sys. Corp.*, 269 F. Supp. 2d 285, 301 (S.D.N.Y. 2003). Plaintiff has not explained how bipolar

disorder has "substantially limit[ed] one or more major [of his] life activities." 42 U.S.C. § 12102(1). This alone warrants dismissal of Plaintiff's ADA claims. *See Graham v. Macy's Inc.*, No. 14-cv-3192, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (holding that allegations regarding a plaintiff's bipolar disorder are insufficient because "the Complaint does not explain how that impairment 'substantially limits one or more' of [the plaintiff's] 'major life activities.'"); *Williams*, 2020 WL 906386, at *4 (concluding that without "threshold showing" that plaintiff suffered from a disability as defined by the ADA, the Court could not "properly analyze [plaintiff's] allegations as to any of the ADA claims – discrimination, retaliation, hostile work environment, or failure to accommodate").

As such Plaintiff's ADA claims against Allied are dismissed for failure to establish a *prima facie* case.

## II.     NYSHRL and NYCHRL Claims

Lastly, Plaintiff alleges violations of the NYSHRL and NYCHRL. Federal district courts have jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), however, the Court may decline to exercise supplemental jurisdiction over remaining state law claims after dismissing "all claims over which it has original jurisdiction." "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal citation omitted). Generally, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense,

the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (internal quotation marks and citation omitted); *accord Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir.), *cert. denied*, 562 U.S. 948 (2010).

Having dismissed Plaintiff's ADA claim, and there being no other basis for federal jurisdiction over this case, the Court elects to not exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Williams*, 2020 WL 906386, at *7 (declining to exercise supplemental jurisdiction over Plaintiff's state-law claims as this "would not disserve the principles of judicial economy, convenience, or fairness" given that "[t]he Court has addressed and dismissed Plaintiff's federal claims under the ADA . . . and done so early in the litigation"). Accordingly, those claims are dismissed without prejudice.

## CONCLUSION

For the reasons herein, Defendant's motion to dismiss Plaintiff's claims is **GRANTED**. The Clerk of Court is directed close this case.

**SO ORDERED.**

**Dated: July 20, 2021**
    **New York, New York**

_____
    **ANDREW L. CARTER, JR.**
    **United States District Judge**